Henry Hilinski v. Commissioner. Steven F. Woods v. Commissioner.
Hilinski v. Commissioner
Docket Nos. 43479, 43480.
United States Tax Court
T.C. Memo 1955-173; 1955 Tax Ct. Memo LEXIS 168; 14 T.C.M. (CCH) 659; T.C.M. (RIA) 55173; June 28, 1955
*168 William J. Murray, C.P.A., 2643 Park Avenue, Detroit, Mich., for the petitioner. Robert J. Fetterman, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion These consolidated proceedings involve deficiencies in income taxes for the taxable year 1945 in the amounts as follows: Petitioner
Amount
Henry Hilinski
$3,066.97
Steven F. Woods
2,966.29
The ultimate issue presented is the amount of the net operating loss carry-back from 1947 which the petitioners are entitled to in determining their respective taxable net income for the year 1945 as a result of the operations of the partnership conducted under the name of Oak Tool & Thread Chasing Company. The determination of this issue involves the propriety of the respondent's adjustments in arriving at the net operating loss of the partnership for the year 1947. Findings of Fact The facts which are stipulated are found accordingly. During each of the taxable years 1945 and 1947 petitioners were equal partners in Oak Tool & Thread Chasing Company, a Michigan partnership, hereinafter referred to as the partnership. Each petitioner filed his income tax return for the years *169 1945 and 1947 with the collector of internal revenue for the district of Michigan, at Detroit. The partnership engaged in a machine shop and light tool manufacturing business. It filed its partnership returns for the years 1945 and 1947 with the collector of internal revenue for the district of Michigan, at Detroit, on the accrual basis of accounting. On August 26, 1946, petitioners entered into a written agreement with Tim T. Musselman and Edgar A. Crumb, owners of a patent for a water pistol known as the "Hydro-Tomic Water Rocket." Under the agreement petitioners were given the exclusive right to manufacture the water pistol for a period of five years. They agreed to manufacture a minimum of 100,000 pistols by December 1, 1946, or as soon thereafter as possible, to bear all manufacturing, packing, crating, and shipping expenses, and to furnish all necessary tools, dies, jigs, and fixtures required in manufacturing the water pistols. Petitioners agreed not to manufacture any other kind of water pistol during the five-year period. On the other hand, Musselman and Crumb agreed to procure sales orders and to pay all expenses of sale. They were to receive 13 1/4( for each pistol manufactured *170 up to and including 100,000, and 16 1/3 per cent of the gross sales price of each pistol thereafter. They were not entitled to receive any payments until the petitioners paid one Gustave L. Schilkey the sum of $12,000 for moneys advanced to petitioners. Upon termination of the agreement all tools, dies, jigs, and fixtures were to become the property of Musselman and Crumb. On August 26, 1946, the partnership and Schilkey entered into an agreement under the terms of which the latter was to advance to the partnership the sum of $10,000, to be repaid within six months and, in addition, the partnership was to pay 2( for each water pistol manufactured during the ensuing five years. Petitioners encountered manufacturing difficulties almost immediately after entering into the two agreements of August 26, 1946. Sales were disappointing due to the appearance of cheaper products on the market which were made of plastic instead of metal. Petitioners were not equipped to handle plastics. On April 28, 1947, petitioners entered into a written agreement with Musselman and Crumb which constituted a full and complete accounting to that date. Musselman and Crumb were to receive the sum of $1,422.36 *171 and 300 dozen finished water pistols in full settlement of all royalties owing to them on the basis that 47,416 pistols had been manufactured and sold as of April 28, 1947. Finally, Musselman and Crumb assigned all of their "rights and royalties" held under the agreement of August 26, 1946, to one Ralph E. Baker. On December 30, 1947, petitioners entered into an agreement with Ralph E. Baker. That agreement, together with a clarifying rider which was added in early 1948, provides in pertinent part as follows: "THIS AGREEMENT, Made this 30th day of December A.D. 1947, by and between Steven F. Woods and Henry Hilinski, doing business as The Oak Tool and Thread Chasing Co. of the City of Detroit, Michigan, party of the first part, and R. E. Baker, of the City of Detroit, Mich. party of the second part. "Witnesseth, The said party of the first part covenents and agrees to and with the party of the second part, "1. That the party of the first part is the owner of the manufacturing rights of the Atom-Matic Water Rocket #150, and have in their possession approximately 78,000 parts located at 18600 Mt Elliott Ave. in the City of Detroit, Michigan. That the party of the first part has *172 assembled and ready for shipment 3800 water rockets and machined parts ready to assemble 4000 more rockets, with parts in the amount of 60,000 to be machined and assembled by the party of the first part. "2. That the party of the first part agrees to machine and deliver to the party of the second part all water rocket pistols in the amount of 78,000, said 78,000 water rockets to be machined, assembled and boxed ready for shipment. "3. That the party of the first part shall surrender and deliver all dies and fixtures used in the manufacture and assembly of the water rocket pistol, such dies and fixtures shall become the property of the second part. "4. That for and in consideration of the articles contained in paragraphs one, two and three, the party of the second part shall assume and pay the outstanding obligations consisting of the following: Arrow Mfg. Co. $2,600.00, Dixie Die Cast Co. $1,200.00, City Metals Co. $753.00, Abcone Co. $300.00, Spring of Holly $355.00, Applied Coating Co. $405.00, and to give to Mr. Gustav Schilkey three notes to be signed by the party of the second part, and deliver to the party of the first part the three notes now held by Gustav Shilkey against *173 the party of the first part, said notes total $6,000.00. "5. That the party of the first part shall surrender all open accounts now due and owing for water rockets sold and delivered and shall turn over to the party of the second part all correspondence past and future pertaining to the manufacture and sale of the Atom-Matic Water Rocket Pistol #150. "Rider: It is agreed among the parties hereto that the number of parts, finished and unfinished, in the presently existing inventory subject to this agreement is sufficient to assemble approximately 68,000 Water Rockets less approximately 60,000 handles and an equal number of tubes both of which will be supplied, painted and delivered ready for assembly to the party of the first part by the party of the second part." [1]
Early in 1948 petitioners estimated that it would cost $17,220 to complete the machining and assembling of the unfinished water pistol inventory as of December 31, 1947. The method and figures used in arriving at such amount are as follows: Cost each
Operation
on $9 day
1. Insert spring
$.01250
2. Insert ball and tube
.01125
3. Counter sink hole in cover
.00450
4. Paste cover on handle
.04500
5. Polish handle
.01406
6. Prepare nozzle for assembly
.00563
7. Ream defective piston holes 250 hr.
on 20% -
equiv. to 1,250
.00090
8. Trigger assembly
.00450
9. Final assembly
.03273
.13107
Machine long tube each
$ .03
Machine short tube each
.015
.04500
.17607
Cost aver. 1947
.20970
Less machining
.045
.045
.16470
.13107
13107
2/.29577
Average
$ .14789
Use for machining
.045 X 60,000
$ 2,700
Use for general assembly
.15 X 64,000
9,600
$.195
12,300
Overhead 40%
4,920
$17,220
*174 The following entries as of December 31, 1947, were made in the partnership books of account to reflect the agreement of that date: "CLOSING ENTRIES DECEMBER 31, 1947
Income and
Balance sheet
expenses
Dr.
Cr.
Dr.
Cr.
"Inventories -
Misc. 12/31/47
$ 3,907.62
Gun parts 12/31/47
15,229.79
$19,137.41
Cost of sales for
inventory
difference
$19,137.41
To write off worthless
inventories
Accounts payable: Arrow Mfg. Co.
2,642.69
Abcone
300.00
American Spring of Holly
365.89
Applied Castings
405.00
City Metals
743.40
Dixie Die Cast
1,467.99
$5,924.97
Notes payable -
Gustave Schilkey
6,000.00
6,000.00
$11,924.97
Reserve to cover work on
gun contract
17,220.00
Loss on gun contract
5,295.03
To record 12/30/47 agreement with Ralph E. Baker whereby latter takes over entire gun inventory. Oak Tool to complete inventory - all for payment by Baker of Oak Tool liabilities of $11,924.97." Partnership accounts receivable in the amount of $565 were transferred to Baker. Pursuant to the agreement of December 30, 1947, Baker executed and delivered to Schilkey his promissory *175 notes for $6,000 in exchange for petitioners' notes aggregating $6,000, which the latter received and destroyed. On June 30, 1949, an action was brought against petitioners by one Clayton Heimstadt, as assignee of Schilkey, based upon the agreement of August 26, 1946, between petitioners and Schilkey. The suit was to recover $7,080, of which $6,000 represented the unpaid balance of the $10,000 advanced and $1,080 represented royalties on the 54,000 water pistols manufactured and sold by petitioners as of the date of suit. Petitioners answered by alleging the termination of the agreement by mutual consent. The action is still pending. A second suit was then instituted against petitioners by Heimstadt wherein Baker was named as codefendant. Petitioners' answer included the following "Special Defenses": "1. That on or about the 30th day of December, A.D., 1947, these defendants [petitioners] entered into an agreement, a copy of which is attached hereto, entitled Exhibit A, with defendant Ralph E. Baker whereby the defendants Steven F. Woods and Henry Hilinski, individually and doing business as Oak Tool and Thread Chasing Company, transferred to the said Ralph E. Baker all of *176 the certain parts which they had in their possession for the assembly of a certain Atom-Matic Water Rocket # 150 to the said Ralph E. Baker and the said Ralph E. Baker, in return, assumed all outstanding liabilities of the said individuals and company, including the liability on three promissory notes totalling Six Thousand ($6,000.00) Dollars held by one Gustave Schilkey whom plaintiff claims to be his assignor in this cause of action;" * * *
Baker, in his answer, denied having entered into any agreement with petitioners and denied ever undertaking to pay a balance of $6,000, plus royalties, to Schilkey, Heimstadt's assignor. The last action in the second proceeding was a praecipe for jury trial filed January 16, 1953. The balance sheet of Oak Tool & Thread Chasing Company, as shown by the partnership return of income for 1947, is as follows: "Beginning F/Y 1947
End F/Y 1947
"Assets
Amount
Total
Amount
Total
Cash
($ 824.38)
($ 579.38)
Notes and accounts
receiv-
able (less reserve)
8,603.78
2,881.61
Inventories
27,272.62
350.00
Depreciable assets
$35,572.26
$38,073.98
Less: Reserve for
4,682.20
30,890.06
7,374.93
30,699.05
depreciation
Land
1,608.29
1,608.29
Other assets
155.00
160.00
Total assets
67,705.37
35,119.57
"Liabilities
Accounts payable
26,452.50
8,502.24
Notes and mortgages
21,191.02
11,810.19
payable
Accrued expenses
1,915.05
3,635.51
Reserve to cover cost to
com-
plete work on water
pistol
contract
17,220.00
Partners capital
accounts: Steven W. Woods
9,868.28
(1,913.43)
Henry Hilinski
8,278.52
18,146.80
(4,134.94)
(6,048.37)
Total liabilities
$67,705.37
$35,119.57"
*177 In the partnership return of income for 1947 for Oak Tool & Thread Chasing Company, a deduction in the amount of $5,295.03 was claimed as "Loss on Water Pistol Contract," with the following explanation: "Loss on Water Pistol contract arises from 12/30/47 agreement under which this partnership disposed of all water pistol inventories and related payables but obligated itself to complete unfinished assemblies for the purchaser." Respondent disallowed the claimed deduction - "* * * for the reason that costs for the year 1947 connected with the sale of the water pistol inventory was included in the cost of sales as part of the opening inventory. The inclusion of the $5,295.03 in 'other deductions' made it a double deduction and therefore unallowable." Gross sales of the partnership were increased by the amount of $11,589.97 to reflect the transfer of inventory to Baker in consideration of the partnership liabilities assumed by him. In determining the deficiences in question the respondent allowed each petitioner a net operating loss from 1947 to 1945 in the amount of $1,905.69 and increased their distributive share of the partnership income for the taxable year 1945 by the amount *178 of $676.06. The net operating loss of the partnership for the year 1947 was in the amount of $3,811.38. Each petitioner is entitled to a net operating loss carry-back from 1947 to the taxable year 1945 in the amount of $1,905.69. Opinion LEMIRE, Judge: The ultimate question presented is the amount of the net operating loss carry-back from 1947 to 1945 which the petitioners, as equal partners of the business conducted under the name of Oak Tool & Thread Chasing Company, are entitled to in arriving at their net taxable income for the taxable year 1945. The partnership return for the year 1947 shows a net operating loss in the amount of $21,031.38. Among the deductions claimed was the amount of $5,295.03, designated as a "Loss on Water Pistol Contract." The partnership books disclose that this alleged loss is arrived at by subtracting from $17,220, set up as a reserve liability by the partnership, the amount of $11,924.97 which the partnership was to receive under a written agreement between the partnership and Baker. The contract in question is set forth in full in our findings of fact. In auditing the partnership return for 1947 the respondent disallowed the claimed loss *179 deduction of $5,295.03 and increased gross sales by $11,589.97. It is agreed that the latter amount should be increased to $11,924.97, resulting in a net operating loss for 1947 in the amount of $3,811.38. In determining the deficiencies in question the respondent allowed each petitioner the amount of $1,905.69 as a net operating loss carryback from 1947 to 1945. The amounts involved are not in dispute. The controversy resolves around the propriety of the reserve liability of $17,220 set up as of December 31, 1947, to cover estimated cost of the services required to machine and assemble the unfinished water pistol inventory transferred pursuant to the agreement of December 30, 1947. The partnership kept its books and filed its returns on the calendar year basis under the accrual method of accounting. If the partnership properly accrued the liability in question, the adjustments made by the respondent are erroneous. The law controlling the controversy is clear and settled. It is well established that contingent liabilities are not accruable. ; ; . *180 No useful purpose could be served by a review of the many cases dealing with reserves for liabilities since the decision in each case depends upon its own peculiar facts and circumstances. It is necessary that we consider the agreement of December 30, 1947, between the partnership and Baker. While the record discloses that a certain relationship existed between the partnership and Baker, as a result of the prior agreement of August 26, 1946, and the settlement agreement of April 28, 1947, we think that the agreement of December 30, 1947, was intended to supersede the prior agreements and to be a final and complete agreement between the parties. The agreement does not provide any specific time for the performance of the respective covenants. It may be implied that the parties intended a reasonable time compatible with the nature of the convenants. We think it clear that the partnership was transferring its inventory of water pistols to Baker in consideration of his agreement to assume and pay certain partnership obligations specified in the agreement. The record indicates that the partnership's financial condition was at low ebb and that one of its purposes of entering into the agreement *181 was to obtain relief from the demands of creditors for payment by having Baker assume and pay these obligations. Baker was engaged at the time as an independent salesman in exploiting the sales of the water pistols and was anxious to acquire the pistol inventory for the purpose of continuing his sales activities. The partnership agreed to transfer the inventory in consideration of Baker's agreement to pay the obligations specified. It appears that Baker partially performed by giving his notes to Schilkey in exchange for the partnership notes which were returned to it. That the partnership transferred the pistol inventory to Baker is evidenced by the fact that it charged Baker with the rental of the building where the inventory was then stored. It appears that a portion of the inventory was not completely assembled and ready for delivery. Baker agreed to supply the necessary handles and tubes to enable the partnership to complete the pistol inventory. The partnership's obligation to complete the unfinished inventory was clearly contingent upon Baker's furnishing the necessary parts. Baker's obligation was a condition precedent to the partnership's promise to assemble the unfinished *182 inventory. The petitioners contend that the agreement was entire and that the promises were mutual and dependent. The general rule is that the question whether a contract is entire or severable depends upon the intention of the parties. . But since the Court cannot say what the parties may have intended, their actual intent must be deduced from the entire contract when in writing, considering the subject matter, the purpose of its execution, and the situation and circumstances of the parties at the time they made it. ; . If the consideration is apportioned the contract may be severable. . The facts and circumstances, together with the other evidence in the record, convince us that it was the intention of the parties that the contract was severable. The promise of Baker to furnish certain parts and the promise of the partnership to complete the assembly of the pistol inventory were dependent covenants. The transfer *183 of the inventory and the assumption of the partnership liabilities were dependent, but the latter were independent of the former covenants. However, we think, the right of the partnership to accrue the amount of $17,220 as the cost of the completion of the pistol inventory does not depend upon a determination as to whether or not the contract was severable. The partnership's obligation to assemble the unfinished part of the inventory was clearly contingent upon Baker's furnishing the additional necessary parts. The record discloses that the estimated cost accrued in the amount of $17,220 is based on the assumption that Baker had supplied the parts. The record does not reveal that Baker ever furnished the parts required to complete the inventory and no claim is made that he did so. As early as February 1948 the partnership was aware that Baker was defaulting, since the partnership was required to pay some of the creditors whose obligations Baker had assumed and agreed to pay. Of course, the assumption of Baker did not relieve the partnership of its primary obligation to pay, since it does not appear that the creditors ever accepted Baker as their debtor. The petitioners have the *184 burden of showing the existence of a fixed and definite liability to justify the accrual of the cost of completing the assembly of the water pistols, and we are convinced that they have failed to do so. Since the deduction of $5,295.03 claimed on the partnership return for 1947 was computed upon the basis of a proper accrual of the amount of $17,220 as a fixed liability, we sustain the respondent's disallowance of such amount in determining the operating results of the partnership for the year 1947. This brings us to a consideration of the respondent's adjustment increasing gross sales. The respondent takes the position that under the agreement the partnership, in effect, sold its water pistol inventory, and that the obligation of Baker to pay certain partnership liabilities constituted gross income to the partnership in 1947. The argument advanced is that the transfer of the inventory and the obligation of Baker were definite commitments and the amount was fixed and certain. Hence, the partnership, being upon the accrual basis, was required to accrue such amount notwithstanding the fact it may never actually receive it. The petitioners contend that since the agreement was *185 entire and the respective covenants dependent, the partnership should not be charged with the amount Baker assumed if it is not permitted to accrue the liability for the estimated cost of assembling the unfinished inventory. Since we have already determined that the agreement of December 30, 1947, was severable, this contention of the petitioners is without merit. The petitioners rely upon the rationale of cases such as , affirming [772]. We think such reliance is misplaced since the cases are factually distinguishable. The partnership was required to accrue in 1947, when the contract became effective, the amounts which Baker agreed to pay. We, therefore, sustain the respondent's determination that the gross sales of the partnership should be increased by the amount of the partnership debts which Baker agreed to assume and pay in consideration of the transfer of the water pistol inventory. The two contested adjustments made by the respondent in determining the net operations of the partnership for the year 1947 having been sustained, we have found as an ultimate fact that the *186 net operating loss of the partnership, which may be carried back to 1945, is the amount of $3,811.38. It is stipulated that the distributive share of the partnership income for the taxable year 1945 should be increased by the amount of $676.06 to each petitioner, as determined by the respondent. Decision will be entered for the respondent. Footnotes
1. The contract is reproduced as written, including obvious errors.↩